**63 So.2d 610**

**Succession of WASHINGTON.**

**No. 40550.**

Feb. 16, 1953.

Louis S. Prejean and Braxton B. Croom, Baton Rouge, for plaintiffs-appellees.

Casey, Babin & Casey, New Orleans, for defendant-appellant.

HAWTHORNE, Justice.

Bert Vargo has appealed from a judgment declaring invalid and setting aside a bequest to him, made in a nuncupative will by public act, of certain immovable property situated in the City of New Orleans bearing Municipal No. 1020 Conti Street. The district court found that Vargo and the testatrix, Juliette Washington, had lived in open concubinage, and held therefore that under Article 1481 of the LSA–Civil Code she was incapable of making to him a donation of immovable property.

There does not seem to be any serious dispute between the appellant and the ap-

pellees, who are the collateral heirs of the deceased, as to the law which is applicable to this case. We have only to decide the legal significance of the facts presented here.

The testatrix was a Negro, and the appellant Bert Vargo is a Caucasian. The record establishes to our satisfaction that they were living in a state of concubinage at 1020 Conti Street and had so lived for 10 or 15 years, and there is no necessity for us to set out in detail or discuss the sordid evidence which establishes this.

The serious question presented is whether this man and this woman lived in "open" concubinage within the meaning of that term as used in Article 1481 of the Code. Appellant contends that their relationship was not one of open concubinage because they occupied separate rooms. Even if we concede this to be true, this fact alone would not prevent their relationship from being one of open concubinage. In Succession of Jahraus, 114 La. 456, 38 So. 417, 418, this court said:

> " * * * What the law aims at is the relation, the permanent relation of living together as man and wife without being married, and, if that relation is maintained openly, the condition of article 1481 is fulfilled, even though the parties do not reside together. * * *"

In 1847, over 100 years ago, the court in the case of Cole v. Lucas, 2 La.Ann. 946, said of the object and purpose of our codal provision:

> " * * * The disabilities under which the law places persons who have lived in this condition, are created for the maintenance of good morals, of public order, and for the preservation of the best interests of society."

In the landmark case of Succession of Jahraus, supra, this court reviewed the history of the article and stated that the word "concubinage" as used therein describes a status, and not mere acts of fornication or adultery however frequent or habitual, and that the word "open" as used in the article means "free from concealment, reserve, or disguise, not secret or secretive, plain and aboveboard"; that "open concubinage" means "one that is plain and aboveboard, without secret, reserve, or disguise, and not merely one that is notorious". The court pointed out that the redactors of our Code had used the word "open" advisedly because "They fully appreciated the force of the objections which had been made, and the grave and unseemly scandals which resulted from permitting scrutiny into the private lives of people who were dead and no longer able to defend themselves, the rehashing of scandalous rumors, and the unveiling of their weaknesses and faults * * *."

The deceased for many years prior to her death lived at 1020 Conti Street in New Orleans and operated a house of prostitution there, which was very thinly disguised

as a rooming house, and for several years the appellant resided there. The trial judge concluded from the evidence, and we agree with his conclusion, that the appellant Vargo and the deceased were engaged in the illegal business of conducting a house of prostitution, although Vargo denied that he had any financial interest in it. He contends that he was nothing more than a roomer in the house, but the facts do not support his contention. He assisted the deceased in the management of her illicit business, was instrumental in procuring bail for the women of the dwelling when arrested, kept the property in repair, and advanced to, and received from, the deceased cash loans. He showed affection for her, even embracing and kissing her in the presence of others, and in speaking to her relatives and associates she referred to him, sometimes in his presence, as her "boy friend", her "old man", and her "husband". He accompanied her occasionally on visits to her relatives. During her last illness, on his own admission, he handled all the proceeds realized from the illicit business. He visited her often in a public hospital and publicly caressed her. When she died, he was in attendance at the funeral parlor, went to her burial at the cemetery, and wept and showed signs of grief.

Numerous people who lived in the neighborhood, called as witnesses by the appellant, admitted that it was rumored that appellant and the deceased were living together. These rumors, gossip of the neighborhood, would by no means be sufficient,

standing alone, to make the relationship of these parties "open" within the meaning of the article of the Code. After considering all the evidence, however, we find that to the associates, relatives, and employees of the deceased the relation was admitted and that as to them no effort was made to conceal it, and we conclude that Vargo and the testatrix lived together in open concubinage, within the meaning of Article 1481. By this holding we are giving effect to the purpose of the law of maintaining good morals and public order and preserving the best interests of society without prying into the innermost secrets and private life of the deceased.

For the reasons assigned, the judgment appealed from is affirmed at appellant's costs.

FOURNET, C. J., absent.