94 So.2d 666

Succession of Henry J. MOORE, Jr.

No. 42905.

April 1, 1957.

Charles E. de la Vergne, New Orleans, for defendant-appellant.

Byrnes & Wallace, New Orleans, for plaintiff–appellee.

HAWTHORNE, Justice.

·Henry J. Moore died in New Orleans on August 2, 1955, leaving neither wife, ascendants, nor descendants. By last will and testament in olographic form dated July 26, 1955, he bequeathed all of his property to Mary Belle Patterson.

This will was duly admitted to probate, and an inventory showed that his estate consisted of both immovable and movable property having an appraised value of over $19,000, including real estate appraised at $16,000.

Shortly after the probate of the will, plaintiffs, collateral relatives of the deceased, instituted this suit against the universal legatee, Mary Belle Patterson, to have the bequest to her of all of Henry Moore's property set aside on the ground that the donation mortis causa was null and void under Article 1481 of the Civil Code because Moore and Mary Belle Patterson had lived together in open concubinage. After trial the lower court rendered judgment setting aside the bequest to Mary Belle Patterson in its entirety, and she has appealed.

Article 1481 of the Civil Code provides: "Those who have lived together in open concubinage are respectively incapable of making to each other, whether *inter vivos* or *mortis causa*, any donation of immovables; and if they make a donation of movables, it can not exceed one-tenth part of the whole value of their estate. * * *"

In the leading case of Succession of Jahraus, 114 La. 456, 38 So. 417, 418, this court interpreted the term "open concubinage" used in Article 1481 as concubinage "that is plain and aboveboard, without secret, reserve, or disguise, and not merely one that is notorious". In Jones v. Kyle, 168 La. 728, 123 So. 306, 307, this court reiterated the pronouncements of the Jahraus case, saying:

"In Succession of Jahraus * * * this court had occasion to inquire into the meaning of 'open concubinage.' The court said that the word 'concubinage' described a status and not mere acts of fornication or adultery however frequent or even habitual; that the word 'open' means free from concealment, reserve or disguise, not secret, but plain and aboveboard; that 'open concubinage' means one that is plain and

aboveboard, without secret, reserve, or disguise, not merely one that is notorious; that 'the concubinage should be so public as to be practically avowed, not necessarily by word, but at any rate by unambiguous, unequivocal conduct; that the relations must be such that, when sought to be made the basis of judicial action, no odious inquisition might be necessary, and no nice poising of testimony.' "

See also Succession of Lannes, 187 La. 17, 174 So. 94; Succession of Washington, 222 La. 707, 63 So.2d 610.

■ The record shows to our satisfaction that Moore and Mary Belle Patterson lived together in concubinage, and that the concubinage was open.

For almost a year before the death of Henry Moore, he and Mary Belle Patterson were having sexual relations with each other, and their liaison began while she was still living with her husband. In June of 1954 she left her husband, and shortly afterwards moved into an apartment house owned by Moore. Her apartment was next to the one occupied by Moore, and she used the kitchen and bath of his apartment. She paid rent for her apartment until January or February, 1955. At that time she moved into Moore's apartment and lived with him there until his death in August of that year. After she moved into his apartment, they lived together as husband and wife, and their conduct clearly indicates that their

relationship had by this time assumed the status of concubinage and was not "mere acts of fornication or adultery".

On the question of whether the concubinage was open, which is a question of fact, the trial judge after hearing all the evidence and the testimony of the witnesses concluded that this man and this woman had lived in open concubinage, and we do not think he erred. Appellant herself denied emphatically that there were any improper relations between her and the deceased, but her testimony is refuted by other evidence. When she first moved into Moore's apartment house, both she and Moore made some effort to conceal their relations from her husband. These efforts, however, continued only for a short time, and after she moved into his apartment the concubinage was open. It was known in the community in which they resided that they were living together as husband and wife, and their friends and associates were well aware of their relationship. The only serious question here is whether Moore and Mary Belle Patterson themselves made any attempt to conceal the concubinage. We do not think they did. She referred to herself as Moore's common-law wife, and he spoke of her to friends as his "old lady" and his common-law wife. The term "old lady" as shown by the record is commonly used among members of the Negro race, to which all of these persons belong, of a woman who is living with a man out of

wedlock. There is other evidence in the record establishing that the relations of these parties were free from concealment or disguise and plain and aboveboard, and that neither one of them, except just at first, made any effort to conceal their relations. There appears to be no reason for us to disturb the finding of the trial judge on this question of fact.

■ As we have stated, the district judge set aside the donation mortis causa to appellant in its entirety, and in doing this he did not properly apply the provisions of Article 1481. The donation mortis causa to Mary Belle Patterson of the immovable property left by the deceased is void and without effect. As to the movable property, however, the donation is valid but must be reduced to one-tenth of the value of all of the property left by the testator. Art. 1481, La.Civ.Code; Olivier v. Blancq, 2 La.Ann. 517; Succession of Hamilton, 35 La.Ann. 640; Succession of Landry, 114 La. 829, 38 So. 575.

For the reasons assigned the judgment appealed from is amended by recognizing Mary Belle Patterson to be entitled to movable property of the succession of Henry J. Moore, Jr., equal to one-tenth of the value of the whole estate. All costs are to be paid one-tenth by appellant and nine-tenths by appellees. In all other respects the judgment appealed from is affirmed.

HAMLIN, J. ad hoc, recused.